OPINION OF THE COURT
Wachtler, J.
In these two appeals, we are again called upon to determine the proper limits on the custodial questioning of a *142 defendant in the face of knowledge by the police of defendant’s prior involvement with the criminal justice system. In both cases, the police were aware of pending, unrelated matters, but were told by defendants upon inquiry that they were not then represented by counsel on those matters. Defendants argue that, had the police gone further with their inquiries, they would have discovered that defendants were, despite their denials, represented by counsel, thus precluding questioning in the absence of a waiver executed in counsel’s presence. We do not interpret our decision in People v Bartolomeo (53 NY2d 225) to impose such a duty of further inquiry, at least where the circumstances indicate that it was not unreasonable for the officers to believe defendants’ statements that they were not represented by counsel. Thus, the motions to suppress were properly denied, and we therefore affirm the order of the Appellate Division in each case.
People v Lucarano
In People v Lucarano, the findings of the suppression court indicate that Detective James McCready, while investigating the beating death of an elderly woman, came upon information linking defendant to the crime. A check through Suffolk County records revealed that defendant had several prior arrests, the last of which had occurred only about two weeks previously. No disposition on the charges had, to the detective’s knowledge, been made. Upon Detective McCready’s inquiry of other detectives who knew defendant, he was informed that defendant’s troubles with the law stemmed from his relationship with his girlfriend, who was a married woman, and that his most recent arrest was triggered by the complaint of either defendant’s girlfriend or her husband.
While Detective McCready’s investigation was still underway, Police Officer Norman Bysheim, who had arrested defendant previously and thus was familiar with his troubles with his girlfriend,[1] received a telephone call from *143 defendant’s mother. The call came from Brookhaven Memorial Hospital, where defendant had been taken following an automobile accident. Believing his girlfriend was responsible for the accident, defendant wanted Officer Bysheim’s assistance in taking recourse against her to end the harassment. Although Officer Bysheim could not meet with defendant at that time, he later learned that the Homicide Squad was interested in defendant and informed Detective McCready of defendant’s call.
Officer Bysheim thereafter arranged to meet with defendant. On the way to the hospital, Detective McCready was again informed that defendant’s arrests stemmed from his relationship with his girlfriend. At the hospital, defendant told the two officers that he was tired of being pushed around by his girlfriend and wanted to sue her. When asked who his lawyer would be, defendant responded that he did not have one, but his father was looking into it. Detective McCready then asked defendant specifically about his recent arrest and was told that he had no lawyer in connection with it. When the detective expressed disbelief that one with so many arrests had no lawyer, defendant responded that he did not need a lawyer because all of the arrests were connected with his girlfriend and would be resolved in Family Court. Contrary to this statement, but unknown to the officers, defendant was in fact represented by Legal Aid on several outstanding charges.
Thereafter, defendant initiated a conversation about the homicide then being investigated and told the officers that a person living near the victim had committed the crime. The following day, after defendant signed himself out of the hospital, he was arrested and given Miranda warnings. Defendant stated that he did not want an attorney present. Faced with the mounting evidence against him, defendant eventually admitted that he struck the victim with a wrench after unsuccessfully attempting to have sexual intercourse with her.
Defendant’s motion to suppress this statement was denied, and he was convicted of manslaughter in the first degree. The Appellate Division affirmed.
*144 People v Walker
In People v Walker, the findings below indicate that the victim of a severe assault had identified defendant as his assailant. A few days later, an investigating detective noticed on an arrest card that defendant had been arrested the previous night on a Family Court warrant. It was apparently assumed, correctly, that the warrant had issued in connection with a nonsupport proceeding. The matter was turned over to other detectives, who were informed of defendant’s recent arrest.
Thereafter, the defendant was brought in to speak with the detectives and was asked if he was represented on the Family Court matter or any other unrelated charge. Notwithstanding that defendant had in fact previously obtained Legal Aid representation on the nonsupport matter, he stated that he had no attorney and that the Family Court charge was nonsense. Defendant then explained that he did beat the victim with a hammer and a martial arts stick, because he was upset that the victim was trying to have sexual intercourse with defendant’s mother, who was not well.
Defendant’s motion to suppress this statement was denied, and his conviction of assault in the first degree was affirmed by the Appellate Division.
The Law
Both defendants argue that their statements should have been suppressed, because they were obtained without counsel present and under circumstances in which a valid waiver of the right to counsel could not be effected. Essentially, it is the defendants’ position that the police, who knew of the matters pending against the defendants, were bound to inquire further whether defendants had obtained representation on those matters, notwithstanding that an inquiry of defendants themselves in each case produced a denial of representation. Defendants argue that having failed to make that further inquiry, the police were chargeable with the information a “proper” inquiry would have revealed — that defendants were, despite their disclaimers, represented by counsel. We disagree.
*145 In recent years, this court’s efforts to delimit the proper bounds of police questioning of a suspect in custody has led to the development of several lines of cases dealing with an individual’s right to counsel. We began with the rule that once an attorney has entered a criminal proceeding for the purpose of representing a suspect in custody on the charges under investigation, further questioning is precluded in the attorney’s absence (People v Donovan, 13 NY2d 148; People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479). Nor can this right to the assistance of counsel be waived by the suspect unless his attorney is present. Thereafter, we expanded the circumstances under which the right is deemed to attach, holding that once, the police have knowledge that defendant is represented by counsel on an unrelated pending charge, no uncounseled waiver of the attorney’s assistance will be effective (People v Rogers, 48 NY2d 167). But the mere fact that there are outstanding charges as to which defendant’s right to counsel has attached will not preclude questioning on a new charge, unless the police know or have reason to know that defendant is actually represented on the outstanding charges (People v Fuschino, 59 NY2d 91). The emphasis in this line of cases has been upon knowledge on the part of the police of the event triggering the right to counsel. Thus, where the police know defendant is represented by counsel in connection with the charges under investigation (e.g., People v Hobson, supra; People v Paulin, 25 NY2d 445; People v Ramos, 40 NY2d 610; People v Singer, 44 NY2d 241), or that defendant is represented by counsel on an unrelated pending charge (e.g., People v Rogers, supra; People v Miller, 54 NY2d 616)[2] or where defendant has indicated that he desires the assistance of counsel (People v Cunningham, 49 NY2d 203), we have demanded that the police strictly respect the defendant’s right to have that attorney present during questioning. With few exceptions,[3] the *146 knowledge on the part of the police of the event triggering the right to counsel was actual knowledge, and thus the police were required to afford defendant a right they knew had come into existence.
Not until our decision in People v Bartolomeo (53 NY2d 225, supra) did we impose an affirmative obligation on the police to ascertain whether a defendant had obtained representation on a pending charge. There, we held that where the police had actual knowledge of a recent arrest, an outstanding arson charge against defendant, they had an obligation to make inquiry as to whether defendant was represented by an attorney in connection with that charge. Failing such an inquiry, the police were chargeable with whatever information the inquiry would have disclosed. In Bartolomeo, the inquiry would have revealed that defendant was in fact represented by counsel on the outstanding charge, thus precluding the police from further questioning of defendant or from accepting a waiver of the right to counsel in the attorney’s absence (id., at pp 231-232).[4]
In the two appeals before us, the interrogating officers clearly had knowledge of the pending unrelated charges.[5] Thus, Bartolomeo is clearly applicable and required that the officers inquire whether defendants were represented on those matters. At issue is the scope of the obligation to inquire imposed by Bartolomeo in the face of a defendant’s untruthful or erroneous denial that he is represented by counsel. It is argued that a mere inquiry of the defendant is an insufficient effort on the part of police and that even if a defendant denies that he is represented, a “proper inquiry” would include a further check of available records until some undefined point at which the police may appropriately determine whether defendant is telling the truth.
*147 Under the circumstances presented in these appeals, where it is entirely reasonable for the police to believe that defendants had not obtained counsel, we decline to read Bartolomeo as requiring the police to undertake such additional or extraordinary measures. Our decisions in this area, with their emphasis upon the knowledge available to the police, implicitly recognize that there are practical limitations to the obligations that can be imposed upon the investigating authorities, while reflecting a concern that a right known to exist or the existence of which could easily be ascertained not be ignored. It was not intended that to effectuate that right the police would be required to undertake exhaustive inquiries regarding its existence.
Further, underlying the right to counsel itself is a recognition that it is the individual faced with the intimidating force of the investigating authorities who is most in need of the advice of an attorney whose primary concern is for safeguarding that individual’s rights (People v Hobson, 39 NY2d 479, 485, supra). Moreover, the requirement that counsel be present for a valid waiver to take place gives effect to the more general principle that waiver of a constitutional right must be knowing and intelligent (id., at p 484). The value of this protection to the individual far exceeds the inconvenience caused by requiring that the police make a simple inquiry of defendant. Yet, where defendant has frustrated police efforts to ascertain the true state of affairs by denying such representation even though it exists, he himself thwarts the efforts to effectuate this protection.[6] We would achieve little but the hampering of effective law enforcement in requiring the police to probe further in the face of defendant’s unqualified denial of representation.
We are not unmindful of the possibility, as noted by defendants, that an individual who is the target of an investigation may wish to minimize the seriousness of pending charges simply out of fear that to admit such charges are serious enough to require representation may increase the likelihood of his being arrested immediately *148 or that a defendant mistakenly believes that he does not have an attorney. Notwithstanding that possibility we must also consider the State’s important interest in criminal investigations and the extent to which law enforcement efforts will be impeded by a contrary rule. Accordingly we hold that once a suspect denies that he is represented on a pending unrelated charge, the police are under no obligation to make further inquiry, so long as it is reasonable to believe the defendant’s disclaimer of representation.
An examination of the circumstances in the cases before us indicates that the defendants’ denials could reasonably be believed.[7] In Lucarano, all the information available to Detective McCready as well as Officer Bysheim indicated that defendant’s arrests arose from petty disputes with his girlfriend and that defendant persisted in his belief that the charges were minor and would be resolved without going through criminal proceedings. Given the prior familiarity with defendant’s circumstances and plausible explanation for the series of arrests as well as the defendant’s belief that an attorney was unnecessary, it was entirely reasonable to believe his statement that he had not obtained representation on those charges. We reach the same conclusion in Walker, where defendant had been arrested on a Family Court warrant only the night before questioning took place. The relatively minor quasi-criminal nature of the charge and the fact that the arrest had just been made support the reasonableness of the officers’ belief that defendant had not yet, in accordance with his own statement, obtained counsel.
We have considered defendant Walker’s remaining contentions and conclude that his arguments were not properly preserved.
Accordingly, the order of the Appellate Division in each case should be affirmed.
Chief Judge Cooke and Judges Jasen, Jones, Meyer and Kaye concur; Judge Simons taking no part.
In each case: Order affirmed.

. Defendant’s prior arrest had occurred in connection with a burglary of his girlfriend’s house and the theft of her fur coat. At that time, Officer Bysheim suggested that defendant retain an attorney to assist him if he felt he was being harassed by his girlfriend. Defendant responded that it was unnecessary because the charges arose solely from personal disputes that would be resolved in Family Court.

. In People v Marrero (51 NY2d 56), police awareness that counsel had entered the case was held to preclude questioning, and an apparent violation of the right to counsel could not be justified by later-acquired information to the effect that defendant’s arrangement with his attorney was a limited one, not to extend beyond defendant’s surrender to police.

. In some cases, such knowledge was imputed to the police where the attorney had made efforts to convey that knowledge but was frustrated by the failure of police to maintain proper procedures for locating defendant (People v Pinzon, 44 NY2d 458; People v Garofolo, 46 NY2d 592).

. To the same effect, we held in People v Smith (54 NY2d 954) that knowledge that defendant had been arrested eight months previously gave rise to a duty to inquire whether defendant was represented (see, also, People v Fuschino, 59 NY2d 91). In People v Servidio (54 NY2d 951), there was neither knowledge of the pending unrelated charges nor were the circumstances such as to impute knowledge of their pendency to the police, and therefore no duty to inquire was imposed.

. In People v Walker, the People have also argued that the unrelated charge of which the police were aware did not even give rise to the Bartolomeo obligation to inquire, since that matter was only civil or quasi-criminal in nature (see Family Ct Act, § 454, subd 1, par [a]; but see Penal Law, § 260.05). We find it unnecessary to reach this issue in view of our disposition.

. People v Beam (57 NY2d 241) presents a somewhat analogous situation. There, we held that the police had no obligation to ensure that the suspect fully and accurately informed his attorney of the nature of the charges being investigated, before the attorney indicated that it would be permissible to question defendant.

. Of course, it would be the more advisable course to make a record, perhaps even video taped, of the suspect’s answer to the officer’s inquiry regarding prior representation, to avoid later disputes concerning the precise questions asked and responses given.