OPINION OF THE COURT
Jerome L. Reinstein, J.
New York’s “rich development” (People v Blake, 35 NY2d 331, 338) of the right to counsel under our State’s Constitution is now too well known and documented to require repetition. (See, e.g., People v Donovan, 13 NY2d 148; People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479; People v Rogers, 48 NY2d 167; People v Cunningham, 49 NY2d 203; People v Skinner, 52 NY2d 24; People v Kazmarick, 52 NY2d 322; People v Bartolomeo, 53 NY2d 225; but cf. People v Middleton, 54 NY2d 474; People v Ferrara, 54 NY2d 498; People v Mealer, 57 NY2d 214; People v Fuschino, 59 NY2d 91; People v Lucarano, 61 NY2d 138; People v Krom, 61 NY2d 187.)
The question presented in this case is whether the police may deliberately refrain from arresting and questioning a suspect to circumvent the holding in Bartolomeo that “Knowledge that one in custody is represented by counsel, albeit on a separate, unrelated charge, precludes interrogation in the absence of counsel and renders ineffective any purported waiver of the assistance of counsel when such waiver occurs out of the presence of the attorney” (53 NY2d 225, 231, supra). For the reasons hereinbelow stated, this court concludes that they may.
The issue arose in the following factual context. On May 8, 1981, Helen Stuart was found bound and dead in her apparently *123 burglarized apartment on the Grand Concourse. Death was attributed to asphyxiation. Several latent fingerprints were found in Ms. Stuart’s apartment, including a print on her May, 1981 Social Security check, which the police were unable to connect to any particular individual whose prints were then on file. They nevertheless persisted in their investigation, periodically checking these latent prints with prints of individuals subsequently arrested for similar crimes. In mid-October, 1983, Detective Frank Viggiano was notified that the police department’s Latent Print Section had identified the defendant’s prints as matching the print on the Social Security check and another lifted from inside a closet door in the decedent’s apartment.
Detective Viggiano advised the Chief of the Bronx District Attorney’s Homicide Bureau of this discovery and was told to seek additional evidence because the fingerprint identifications alone might not be sufficient to support a homicide conviction. Though sought, no other evidence linking defendant to the crime was found. The only other evidence seemingly available was an admission by the defendant.
In October, 1983, Detective Viggiano was also aware that the defendant had two pending cases in Supreme Court, one accusing her of robbery and the other of burglary; and that she was represented by counsel on those cases. With commendable candor the People concede that the police, with the knowledge of the District Attorney’s office, refrained from arresting the defendant while those cases were pending because they knew they could not question her, or obtain a waiver of counsel, in the absence of her then attorney.
On March 14, 1984, approximately three weeks after defendant was sentenced to probation on her two cases above referred to, she was taken into custody. After receipt of her preinterrogation warnings she waived her right to counsel and confessed to her involvement in the crimes covered by the instant indictment. Defendant now moves to suppress said confession alleging, inter alla, that it was obtained in violation of the right to counsel guaranteed by our State’s Constitution. (No Federal right to counsel is involved since the questioning occurred prior to the commencement of formal judicial proceedings [Brewer v Williams, 430 US 387; Kirby v Illinois, 406 US 682; People v Hawkins, 55 NY2d 474].)
Ms. Stuart’s death occurred between May 4, 1981 and May 8, 1981. It is common knowledge that Social Security checks are received by their recipients on or about the third of each month. *124 In October, 1983, when the police learned that defendant’s prints matched those on Ms. Stuart’s May, 1981, Social Security check they had probable cause to arrest her. However, defendant had no constitutional right to be arrested at that time. (Hoffa v United States, 385 US 293; People v Middleton, 54 NY2d 474, 481, supra.) The five-month delay in arresting defendant, in the circumstances of this case, was not so unreasonable as to deprive her of due process (cf. People v Singer, 44 NY2d 241); nor is there any evidence that the termination of defendant’s then pending cases was manipulated by the People. (People v Mann, 60 NY2d 792.)
Concededly, defendant’s time to appeal from her two prior convictions had not expired at the time of her arrest in the instant case. Though there is no evidence that appeals were, in fact, taken, that factor in any event would be legally insignificant, since those criminal actions terminated with the imposition of sentences thereon. (CPL 1.20, subd 16; People v Colwell, 103 AD2d 169.)
In sum, the police waited until such time as there was no criminal action pending against this defendant before seeking a waiver of her Miranda rights in the absence of counsel. No constitutional right of the defendant was violated by such tactic. At the time of her arrest defendant had, in effect, been restored to the same status as any other person arrested for a crime who could knowingly, intelligently and voluntarily waive her rights and make a statement to the police in the absence of an attorney.
In light of the foregoing, defendant’s motion to suppress is denied.