OPINION OF THE COURT
Jasen, J.
The issue presented on this appeal is whether a suspect’s right to counsel is violated by police questioning about a crime then under investigation, where the police know that the suspect was arrested several months earlier on unrelated minor charges but are unaware that those charges are still pending and that the suspect is represented thereon by counsel.
*113 On October 19, 1980, a 10-year-old female child was forcibly sodomized in a town park in Suffolk County. She, and a friend with whom she had been playing that morning, ran to the victim’s home where her mother telephoned the police. Although defendant was immediately suspected by some of the police due to the information provided by the two young girls, the investigation did not progress until 10 days later, the evening of October 28, 1980, when Detective Matedero received a telephone call from a neighbor of the victim’s family. The caller noted that defendant had been involved in prior incidents with another child in the neighborhood and suggested that he was the sodomist involved in this case as well. The detective thereupon searched the index card file and the arrest book and found that defendant had, indeed, been arrested several months earlier on two separate occasions, April 7, 1980 and May 14, 1980, for public lewdness, a class B misdemeanor (Penal Law § 245.00). The detective did not at that point attempt to locate the case jackets on those charges or to investigate them further. Rather, he sought immediately to interview the caller and other individuals living in the same neighborhood who were familiar with defendant and the earlier incidents. Consequently, he remained unaware that an information complaint had been filed on the prior charges, that they were still pending, and that defendant had been assigned counsel.
Detective Matedero then proceeded to the neighborhood in question and conducted interviews with several individuals who told of defendant’s repeated bizarre and obscene behavior. The detective then visited the young victim in this case and her friend. He took them to the police station where they each viewed a photographic array. However, neither child was able to identify defendant. Detective Matedero then drove them past defendant’s residence, whereupon both girls identified the automobile parked in the driveway as the same one which, as they had described earlier to the police, was driven on the day of the incident by the man who committed the sodomy.
Several hours later, just prior to midnight, Detective Matedero and his partner, Detective Graniello, proceeded to defendant’s home and were admitted into the house by defendant’s father. They advised defendant that they wished to speak with him at the police station about a crime in the neighborhood and would also like him to participate in a lineup. Before leaving defendant’s home, and in the presence of both his parents, Matedero fully advised defendant of his Miranda rights. Defendant explicitly responded that he understood, that he did not wish to *114 contact a lawyer, and that he was willing to speak to the police at the station unaccompanied by one. Upon arrival at the station, defendant was again advised of his Miranda rights, and he repeated that he understood his rights and was willing to speak to the police without an attorney.
When Matedero told defendant that he wished to discuss a recent neighborhood incident, defendant asked if the detective was referring to the occurrence in the town park. When the detective answered yes, defendant proceeded to render a full oral confession. Immediately thereafter, defendant was asked to repeat his statement for a tape recording and, following advisement of Miranda rights for the third time, defendant agreed to do so. Finally, defendant’s confession was typed and, after reading and initialling the preprinted Miranda warnings at the top of the first page, defendant signed the written statement.
Later that same night, defendant consented to both visual and voice identification lineups. The young victim and her friend viewed a five-man lineup separately, but neither could identify defendant. When voice identification procedures were conducted, however, each girl separately recognized defendant’s voice among those of five participants as the voice of the man who had confronted them in the park. While statements concerning the voice identification were being prepared, the young victim’s mother confronted defendant while he sat handcuffed in a squad room. Defendant exclaimed to her that he was sorry for what he had done to her daughter and promised not to go near the park again.
A Grand Jury indicted defendant, charging him with two counts of sodomy in the first degree (Penal Law § 130.50). At a pretrial hearing, defendant moved, inter alia, to suppress all evidence of the oral, tape-recorded and written statements made by him on the night of October 28-29, 1980, on the grounds that they were involuntary (CPL 60.45) and in violation of his right to counsel under the New York State Constitution. The court denied defendant’s motion, finding that defendant had voluntarily accompanied the detectives to the police station, that he had understandingly waived his Miranda rights, and that he had voluntarily given all the statements in question. Further, the court also found that, although the police were aware that defendant had been arrested and charged with public lewdness in connection with two prior incidents, they were unaware of the status of those charges at the time defendant was questioned, they had no knowledge that defendant was being represented by counsel on those charges, and defendant never mentioned to *115 them that he already had an attorney despite having been advised by them, on at least three separate occasions, that he had a right to have a lawyer present and appointed if he so desired. In light of these findings, the suppression court held that defendant’s statements had not been “involuntarily made” within the meaning of CPL 60.45, and that defendant’s right to counsel under the rule enunciated in People v Rogers (48 NY2d 167) had not been violated.
Subsequently, defendant was convicted, upon a jury verdict, of both counts of sodomy in the first degree and was sentenced, as a predicate felon, to two indeterminate terms of imprisonment of 7 to 14 years to run concurrently. A divided Appellate Division affirmed the judgment of Supreme Court. The court unanimously agreed that defendant’s first oral statement, given immediately upon his arrival at the station, was not suppressible, either by reason of involuntariness or violation of his right to counsel, inasmuch as the statement was freely given and defendant had not yet been placed in custody. Likewise, the court was unanimous in holding that defendant’s statement to the victim’s mother was admissible as a spontaneous outburst unaffected by police presence or prior confessions and, in any event, that defendant chose at the suppression hearing to waive any objection to its admission.
On the other hand, the court divided on the admissibility of the tape-recorded and typewritten statements. There was no disagreement that defendant was repeatedly advised of his Miranda rights, that he gave his statements without coercion or inducement, and that the police who questioned him did not in fact know that defendant was being represented on the prior charges or that those charges were still pending at the time of the interrogation. But there was disagreement on the effect of that lack of actual knowledge. The majority of the court believed the officers’ lack of actual knowledge to be dispositive of the correctness of the suppression court’s rulings, but the two dissenting Justices, relying on this court’s decision in People v Bartolomeo (53 NY2d 225), were of the view that the interrogating police had a duty to inquire whether defendant was indeed represented by counsel in connection with those previous offenses and that their failure to do so was fatal to the admissibility of the custodial statements obtained in that counsel’s absence.
Leave to appeal to this court was granted by one of the dissenting Justices. We now affirm the order of the Appellate Division for the reasons that follow.
*116 At the outset of our analysis, it should be noted that the so-called indelible right to counsel as enunciated by this court in People v Rogers (48 NY2d 167, supra) and People v Bartolomeo (53 NY2d 225, supra) applies only to custodial interrogations. Where the police know that a suspect is represented by counsel on pending charges, or where the police know that charges are pending but fail to make inquiry which would disclose that counsel has been assigned or retained, any custodial questioning of the suspect by them in counsel’s absence is barred. (See, People v Lucarano, 61 NY2d 138,145-146; People v Fuschino, 59 NY2d 91, 98.) By contrast, eliciting inculpatory statements from a suspect under noncustodial circumstances “involves no violation of [the] right to counsel even [where] the police are aware that [the suspect] has counsel on a prior unrelated charge”. (People v Farruggia, 61 NY2d 775, 777; see also, People v Johnson, 61 NY2d 932; People v Hauswirth, 60 NY2d 904, affg 89 AD2d 357.)
Here, based upon the suppression court’s findings, the Appellate Division unanimously agreed that defendant was not in custody when he made his first oral statement at the station. This determination was predicated upon defendant’s agreeing in his own home and in his parents’ presence to accompany the police to the station and to speak with them without an attorney. Additionally, defendant was advised at the time that he need not speak with the police and that he was not under arrest, and testimony at the suppression hearing showed that defendant understood and gave his cooperation voluntarily. It cannot be said, as a matter of law, that the findings of the suppression court and the factual determination of the Appellate Division predicated thereon were erroneous, as there is sufficient evidence on the record to conclude that defendant’s initial statement was voluntarily given under noncustodial circumstances. (See, People v Johnson, supra, at p 934; People v Barnes, 50 NY2d 375, 381; People v Yukl, 25 NY2d 585, 588-589.) Consequently, the police did not violate defendant’s right to counsel under the Rogers-Bartolomeo rule when they obtained his first oral confession at the station.
While we also hold that the tape-recorded and typewritten statements were admissible, they present different questions. The Appellate Division unanimously determined that defendant was arrested and placed into custody upon making the oral confession, but the court was divided as to whether defendant’s indelible right to counsel attached at that point. The majority were of the view that mere knowledge by the police that defen *117 dant had twice previously been arrested, without more, did not preclude further questioning inasmuch as defendant was properly advised of his constitutional rights. The dissenters, however, argued that the failure of the police to ascertain that he was presently being represented by counsel on those prior matters required suppression of both custodial confessions.
On this appeal, as at the Appellate Division, defendant contends that the police were chargeable with the knowledge they would have gained from inquiring as to the status of his prior arrests. He argues that under the Rogers-Bartolomeo rule, the police had an absolute obligation to ascertain whether defendant was represented by counsel on the prior matters, regardless of the police officers’ lack of awareness of the actual pendency of charges and the assignment of counsel thereon, and despite the minor nature of those charges and their remoteness in time. We cannot agree.
In People v Rogers (48 NY2d 167, supra), defendant, a robbery suspect, informed the police that he had an attorney on another matter. Thereafter, in the midst of an interrogation, his attorney called and instructed the police to cease further questioning. Under a purported waiver of defendant’s constitutional rights, however, the police continued to question him on unrelated activities. After approximately six hours of interrogation and while still manacled, defendant made an inculpatory statement. The majority of this court held that defendant’s statement should have been suppressed at trial as the police were required to stop questioning defendant in his attorney’s absence as soon as they knew that defendant’s right to counsel had attached, albeit with regard to a prior unrelated charge.
In People v Bartolomeo (53 NY2d 225, supra), the rule adopted in Rogers was somewhat extended. There, defendant had been arrested for arson and was represented by counsel at the arraignment. A mere nine days later, defendant was taken into custody for questioning on a murder charge by officers who had actual knowledge of the outstanding prior arson charge, although not of defendant’s representation by counsel thereon. When they questioned defendant, who had already agreed to speak without an attorney, he made incriminating statements which were introduced at the murder trial. This court vacated defendant’s conviction, the majority holding that the police, having actual knowledge of the very recent arrest and the pending arson charge, had an affirmative obligation to inquire whether defendant had obtained representation on that outstanding matter and, having failed to do so, were charged with constructive knowledge that he had.
*118 Subsequently, this court has further delineated and refined the holdings therein. (See, e.g., People v Lucarano, 61 NY2d 138, supra; People v Fuschino, 59 NY2d 91, supra; People v Miller, 54 NY2d 616; People v Servidio, 54 NY2d 951; People v Smith, 54 NY2d 954; cf. People v Kazmarick, 52 NY2d 323.) In addition to Rogers and Bartolomeo,.defendant relies upon two such progeny: People v Smith (supra) and People v Servidio (supra). In Smith, defendant was interrogated, while in custody as a murder suspect, by a police officer who was aware that defendant had previously been arrested on a felony charge — sodomy — approximately eight months earlier. Although the officer did not actually know whether defendant had an attorney, he acknowledged that he had “assumed” defendant was being represented on that still pending matter. The majority of this court held that defendant’s incriminating statements should have been suppressed, reasoning that, since the officer had “actual notice”, he was obligated to question defendant about his counsel on the earlier charge.
By contrast, in Servidio, decided concurrently with Smith, this court unanimously refused to impose a duty to inquire on the basis of circumstances deemed significantly different. There, defendant was subjected to custodial questioning by a police officer who was unaware of the prior outstanding misdemeanor charges on which defendant had already obtained counsel. As defendant correctly notes, an important consideration in that case was whether actual knowledge of the pending charges was deliberately overlooked or avoided by the police. But this court, relying upon the minor nature of those earlier matters, concluded that there was no reason to believe that there was such deliberate oversight on the part of the police, “even though [the charges] were pending within the same county and presumably the same department, and were but two and one-half months old”. (People v Servidio, supra, at p 953.) Consequently, we held that there was no basis for inferring knowledge of prior representation.
Upon examination of this court’s opinions in the foregoing cases, as well as in others decided shortly before or subsequently, it can be seen that certain factors are critical in determining whether legal representation on prior pending charges bars defendant’s custodial statements elicited in the absence of counsel. The most salient of these are: the extent of the police knowledge; the proximity, severity and notoriety of the prior charges; and the good or bad faith of the police. As this court has clearly stated on a previous occasion, before deciding whether to *119 suppress a defendant’s inculpatory statements, a determination must be made whether the police had “actual knowledge” either that a “defendant’s right to counsel has attached in a prior, unrelated charge” or that “defendant has prior, unrelated charges still pending against him.” (People v Fuschino, supra, at p 98.) Where the police are aware that defendant has counsel on other unrelated charges, they may not question the defendant without his attorney being present. Where the police are unaware that defendant has legal representation but are aware that prior charges are pending against him, they must ask defendant whether he has counsel. Absent some actual knowledge, however, of either defendant’s representation by counsel or the pendency of prior charges, the police have no affirmative duty to cease their questioning or inquire whether defendant has an attorney. (Id.; compare, People v Fuschino, supra, and People v Servidio, supra, with People v Smith, supra, and People v Bartolomeo, supra.)
Moreover, where the prior charges are relatively recent, police officers aware of the earlier arrest will almost certainly know that the charges are still outstanding. (See, People v Lucarano, supra, at p 146.) Where the earlier charges are remote in time, however, no such presumption is warranted. (People v Fuschino, supra, at pp 98-99 [prior arrest was 14 months earlier]; compare with, People v Bartolomeo, supra [9 days].) Concomitantly, it is reasonable to presume that the police would have cause to know of the continuing pendency of a serious felony charge, even after a considerable time past the arrest. Such is not the case with a relatively minor prior offense which is less likely to have earned notoriety within a police department and is more likely to have been disposed of at an early date. (Compare, People v Servidio, supra [prior charges involved minor misdemeanors, two and one-half months old], with People v Smith, supra [felony offense, i.e., sodomy, eight months earlier].) Indeed, as Justice Niehoff aptly noted in his concurring opinion below, since the People must be prepared for trial in considerably less time as the severity of an offense decreases, it is entirely reasonable for a police officer to assume that minor misdemeanor charges would be disposed more quickly than would serious felonies. (See, CPL 30.30 [1].) Allowing for possible adjournments and other delays which could extend the pendency of prior charges, the speedy trial time limitations are not an unreasonable factor to consider when determining whether a police officer’s belief, that charges have been disposed of, was justified. (See, People v Bertolo, 102 AD2d 193, 208 [majority opn], at pp 217-219 [Niehoff, J., concurring].)
*120 Finally, where the police do not actually know that earlier charges are pending, there is no warrant for imputing constructive knowledge that the suspect already has legal counsel absent some measure of bad faith on their part. (See, People v Lucarano, supra, at p 145, n 3; People v Fuschino, supra, at p 99; People v Servidio, supra, at p 953; cf. People v Kazmarick, 52 NY2d 322, 328, supra.) It is true, that where the police are guilty of some misfeasance a different result may obtain. So, for example, such knowledge has been imputed by this court where there was a surreptitious effort by the police to accomplish through agents what they could not do directly (see, People v Knapp, 57 NY2d 161,173); where the interrogating officer chose to disregard his correct assumption that defendant had obtained an attorney on an outstanding charge (see, People v Smith, supra); where the police officers’ failure to facilitate access by counsel foreclosed the latter’s communication with defendant (see, People v Garofolo, 46 NY2d 592, 601); where counsel’s efforts to reach defendant were frustrated by police misinformation and inadequate operating procedures (see, People v Pinzon, 44 NY2d 458, 464); and where the police chose to resolve their somewhat questionable doubts against defendant’s having obtained counsel (see, People v Ramos, 40 NY2d 610, 617-618). By contrast, however, constructive knowledge that defendant has an attorney on an unrelated pending matter is not chargeable to the police where they have not thus acted in bad faith or without sufficient deference to defendant’s right to counsel. There is simply no justification for imputing such knowledge where the police have conducted their investigation and questioning in good faith and with due regard for defendant’s rights. (See, People v Lucarano, supra, at pp 147-148; People v Fuschino, supra, at pp 97-100; People v Servidio, supra, at p 953; cf. People v Adams, 53 NY2d 1, 9.)
Under the circumstances presented in this case, there is no reason to impute knowledge nor, therefore, to suppress defendant’s tape-recorded and typewritten statements. At the time defendant was questioned at the station, the interrogating officers had no actual knowledge that defendant was represented by counsel on prior charges. Indeed, they were not even aware that those prior charges were still pending. Moreover, although they knew that defendant had previously been arrested, the earlier charges involved minor offenses of public lewdness, a class B misdemeanor (Penal Law § 245.00), and those charges were each several months old — 5V2 and 6V2 months respectively — more than enough time in which to expect their final disposition. *121 Hence, it was entirely reasonable for the officers to believe that those charges were no longer pending.
Additionally, there is no indication of any misfeasance or deception on the part of the police. Rather, the record shows that the officers specifically asked defendant at least three times whether he wished to contact a lawyer and each time he unequivocally declined. Instead, he volunteered to speak with the police and, moreover, never mentioned having legal representation on the earlier charges or anything about the charges themselves. Further, the courts below found that there was no credible evidence that the officers improperly induced defendant to give his statements or that they discouraged him from seeking counsel, and there is no basis in the record whatsoever that the police avoided knowledge of defendant’s prior legal representation or that defendant’s attorney was in any manner deliberately foreclosed from communicating with him. Rather, the police expeditiously and diligently pursued information on a recent serious felony offense and, in the course of their investigation, conducted an interrogation of defendant while they were wholly unaware that defendant was under pending charges on which he had obtained legal representation, and only after they had dutifully apprised him of all his rights and had obtained his willing and voluntary cooperation. In the absence of some actual knowledge or any bad faith on their part, the police were under no obligation to take additional measures to ascertain whether defendant’s prior unrelated offenses were still pending and whether he was represented thereon by counsel.
With regard to defendant’s final oral statement, his exclamatory outburst to the victim’s mother, no motion to suppress was made at the pretrial hearing. Indeed, the hearing court explicitly inquired whether defendant sought to suppress that statement in addition to the others, and, in response, defendant’s counsel acknowledged that he was making no such motion. As the Appellate Division correctly noted, defendant thereby affirmatively waived any objection he might have raised to the introduction of that statement. (See, People v Schiavi, 64 NY2d 704; People v Corales, 56 NY2d 767.)
Accordingly for the foregoing reasons, the order of the Appellate Division should be affirmed.