OPINION OF THE COURT
Titone, J.
Defendant has been convicted of murder in the second degree, following a jury trial, in Supreme Court, New York County. On appeal, the Appellate Division, First Department, reversed the judgment of conviction, on the law, granted defendant’s motion to suppress certain statements and remanded the matter for a *382 new trial. The People appeal. We conclude that suppression of the statements was not warranted and reverse the order of the Appellate Division and remit for a review of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]).
On November 7, 1974, Louis Pucci, a 20-year-old college student, warned his neighborhood grocer of an impending robbery by a youth gang. In retaliation, Pucci was shot to death by two gang members, defendant Nicholas Rosa, and Eduardo Matos. Armed with a loaded rifle, Matos had pursued Pucci into the Manhattan grocery store, followed closely by the defendant. Pucci ran to the back of the store, and after defendant told Matos, “Shoot him, shoot him”, Matos fired one shot in Pucci’s direction. Defendant then took the rifle from Matos, aimed it at Pucci and fired the second shot. Louis Pucci later died as a result of a bullet wound in his neck.
Matos surrendered to the police within hours, but the defendant avoided apprehension, until he was arrested on an unrelated charge of kidnapping in Brooklyn in January 1976. On January 26,1976, after the arraignment and preliminary hearing on the kidnapping charge, the defendant was brought to the New York County District Attorney’s office for questioning with respect to the present case. After waiving his Miranda rights, he first made an oral statement to Detective Allen Grant and then a tape-recorded statement to an Assistant District Attorney wherein he admitted being with Matos at the time of the shooting, but denied firing a shot.
A Grand Jury charged Rosa with murder in the second degree (Penal Law § 125.25). Prior to trial, a hearing was held upon defendant’s motion to suppress the statements that he had made to the detective and the Assistant District Attorney. At the hearing, the defendant claimed that, at the time of the police questioning in this case, he had been represented by counsel on a Brooklyn case for which he had received youthful offender treatment. He said that he informed the detective that he was represented by counsel in Brooklyn. Detective Grant testified, inter alia, that after Rosa had been arrested in Brooklyn, he was brought to New York County where he made certain statements after having waived his Miranda rights. Contrary to defendant’s contention at the hearing, the detective said that at the time Rosa was questioned, he did not claim to be represented by an attorney in that Brooklyn case. He further stated that he did not know if Rosa was represented by counsel, but presumed that he was. The detective had made no efforts to ascertain whether the defendant was represented by counsel. In denying the motion to *383 suppress, the trial court credited the testimony of Detective Grant, and rejected that of the defendant.
At trial, witnesses testified that “Coco” (Matos) had fired the first shot at Pucci. A second man, whom they described but did not identify by name, had fired the second shot. The only evidence offered to place Nicholas Rosa at the scene of the murder was his statements to the detective and the Assistant District Attorney. Convicted of murder in the second degree, Rosa was sentenced to an indeterminate prison term of 20 years to life.
The Appellate Division reversed, granted the motion to suppress the statements and ordered a new trial. Citing People v Rogers (48 NY2d 167), it held that since it did not appear that defendant’s claim that he was represented by counsel on the unrelated case at the time of questioning “was or can be controverted” suppression was required (People v Rosa, 80 AD2d 527, 528).
Following our decision in People v Kazmarick (52 NY2d 322), the People sought reargument on the ground that the record of the Huntley hearing did not show whether defendant was in fact represented by counsel at the time that he was questioned and made statements concerning the present case. Upon reargument, the matter was remanded for a reopened Huntley hearing to resolve whether defendant was actually represented on January 26, 1976 (People v Rosa, 81 AD2d 766).
At the conclusion of the reopened Huntley hearing, the court made the following findings of fact: defendant had been arraigned in Kings County on January 20, 1976 on the charge of kidnapping and other related charges; Detective Grant knew that the defendant had been arraigned and was aware that in the metropolitan area of New York indigent defendants are assigned counsel upon arraignment; a Legal Aid Society attorney had been appointed to represent defendant for the purpose of arraignment and the preliminary hearing which immediately followed; at the conclusion of the preliminary hearing, defendant’s counsel had requested that new counsel be assigned under County Law article 18-B to represent defendant because there was a conflict of interest between Rosa and a codefendant; that request was granted; there was no evidence presented as to whether the Legal Aid Society attorney believed that he was relieved from representing defendant or whether he believed that his representation continued until notice of appearance was filed by assigned counsel; Edward Malz filed a notice of appearance in the clerk’s office of the Supreme Court, Kings County, on *384 January 26,1976; there was no evidence of the time of day that the notice was filed; a copy of that notice of appearance was received by the Kings County District Attorney’s office on January 29, 1981 [sic]; Detective Grant did not inquire, nor was he informed by the defendant that counsel had been assigned to the defendant on the Brooklyn case; he was aware of the substantial probability that counsel had, in fact, been assigned; Detective Grant did not know the identity of the assigned counsel, nor whether assigned counsel had filed a notice of appearance.
After reviewing the findings of fact the Appellate Division again reversed defendant’s conviction. The majority of the court held that “[i]n the absence of clear evidence that the earlier representation by Legal Aid was definitively terminated”, the Legal Aid Society’s representation of Rosa continued until the new attorney appeared. The court noted as supportive of its finding of continued representation the fact that the Legal Aid attorney had requested the court to “ ‘appoint an 18B [assigned] attorney for Mr. Rosa’” but did not literally ask to be “‘relieved’ ” (People v Rosa, 99 AD2d 963-965).
 We disagree, in two respects, with the Appellate Division’s holding that the defendant continued to be represented by Legal Aid Society counsel on the pending unrelated charge when he was questioned concerning the Pucci homicide. First, insofar as the Appellate Division’s decision is based on an absence of evidence to indicate that defendant’s earlier representation had terminated, it improperly placed the burden of disproving the fact of the earlier representation on the People. Second, that the Legal Aid Society attorney had not asked to be relieved, but only to have an attorney appointed pursuant to County Law article 18-B, does not demonstrate that the defendant was represented by Legal Aid Society counsel or any counsel on the unrelated charge during the questioning on the instant case. Since the defendant failed to prove that he was represented by any counsel on the pending unrelated charge when he made statements to the detective and the Assistant District Attorney herein, the Appellate Division improperly suppressed those statements.
Well established in this State is the primary rule that all questioning of a suspect in custody must cease once an attorney enters the proceeding to represent the suspect on the charges under investigation (People v Hobson, 39 NY2d 479; People v Arthur, 22 NY2d 325). Under these circumstances, an uncounseled waiver will be ineffective (People v Tompkins, 45 NY2d 748, cert denied 440 US 939). The application of this rule has *385 been extended to circumstances wherein the legal authorities have knowledge that the defendant is represented by an attorney on an unrelated pending charge (People v Rogers, 48 NY2d 167, supra). In that instance as well, we have required questioning to cease and held any subsequent waiver made in the absence of counsel to be ineffective.
In People v Kazmarick (52 NY2d 322, supra), we were asked to further extend this rule to a case wherein the police had knowledge of an unrelated charge pending against the defendant on which his right to counsel had attached, even though the defendant was not represented by counsel on that charge. We declined to so hold. Rather, we recognized that “the right to counsel and representation by counsel are not the same thing” (People v Kazmarick, 52 NY2d 322, 328, supra), and to otherwise hold would be an unnecessary and unrealistic limit on police interrogation procedures in that it would charge “law enforcement officials anywhere with knowledge of accusatory instruments on unrelated charges everywhere”. (Ibid.)
Then, in People v Bartolomeo (53 NY2d 225), we were presented with a factual context foretold in Kazmarick, namely, one in which the questioning legal authorities have knowledge that the defendant has a pending unrelated charge, but no knowledge concerning whether he was represented by counsel on that charge, and the defendant does in fact have counsel on the earlier charge. In Bartolomeo, we held that once the police have actual knowledge of a recent pending charge, they have a duty to inquire whether the defendant is represented by counsel in connection with that charge. Failing that inquiry, they are bound by what it would have revealed; in Bartolomeo, it would have revealed that he was represented by counsel in the earlier charge (cf. People v Bertolo, 65 NY2d 111).[1]
It was not until People v Lucarano (61 NY2d 138) that we were asked to define the scope of the obligation to inquire under Bartolomeo. In Lucarano, the police inquiry most logically began with the defendant himself who responded falsely that he was not represented by counsel. Where the defendant’s response, albeit false, was reasonable under all the circumstances, we declined to extend our decision in Bartolomeo to require the police to conduct a further inquiry to an undefined point in time *386 with view to disproving the defendant’s response. In so doing, we recognized that as a practical matter there are limitations to the obligations that should be placed on police to verify the defendant’s claim that he is not represented by counsel. As we held in Lucarano, a simple inquiry of the defendant is not an unrealistic burden to place on the authorities. Indeed, given the personal and confidential nature of the attorney-client relationship, there is no guarantee that any police inquiry of other than the defendant will be as revealing or will accurately reflect the defendant’s most recent posture concerning his legal representation.
When a defendant seeks to suppress his statements because he had in fact been represented by counsel on a pending unrelated charge, he remains the one who is best and most logically able to prove his allegation that he was represented by counsel on that pending unrelated charge. To place the burden on the People to prove that the representation had terminated, would, in essence, require them to prove a negative, a requirement that “is generally unfair, especially since the conclusion that the negative of the circumstances is necessarily a product of definitional and therefore circular reasoning” (People v Patterson, 39 NY2d 288, 305-306 [Breitel, Ch. J., concurring], affd and approved sub nom. Patterson v New York, 432 US 197, 211-212, n 13; accord, 29 Am Jur 2d, Evidence § 153 [collecting cases holding that it is generally not incumbent upon the prosecutor to disprove a negative especially when the relevant facts are more immediately within the knowledge of accused]).
To be sure, the People must prove the voluntariness of a statement beyond a reasonable doubt (People v Anderson, 42 NY2d 35, 38-39; People v Yarter, 41 NY2d 830; People v Valerius, 31 NY2d 51; People v Huntley, 15 NY2d 72).[2] Mindful, however, that the statutory definition of “involuntarily made” contained in CPL 60.45 (2) would transform any constitutional claim into an attack on voluntariness, we decline to mechanically place the burden of disproving a defendant’s representation by counsel on the People. To do so belies common sense. As former Chief Judge Breitel observed in a somewhat analogous context, “The placing of the burden of proof on the defense * * * is fair because of defendant’s knowledge or access to the evidence other than his own on the issue” (People v Patterson, 39 NY2d 288, 305 [Breitel, Ch. J., concurring], affd and approved sub nom. Patterson v New York, 432 US 197, 211-212, n 13, *387 supra). In fact, placing the burden of proof on the defendant in numerous contexts collateral to the question of guilt has long been upheld (see, People v Berrios, 28 NY2d 361; La Fave & Israel, Criminal Procedure § 10.3).
Consequently, we hold that, with respect to a right to counsel claim, after the People go forward to justify the police interrogation, if the defendant makes a claim that he is represented by counsel on another pending charge of which the police had knowledge, it is the defendant’s burden to show that he was, in fact, represented by counsel on the earlier charge at the time of interrogation.
In this case, Detective Grant knew that the defendant had been recently charged in a Brooklyn kidnapping case when he questioned him in New York County concerning the murder of Louis Pucci. Thus, he had a duty to inquire whether defendant had obtained representation on the pending case. Failing that inquiry, he was chargeable with whatever it would have disclosed.
At the reopened Huntley hearing, the evidence showed that on January 20th, the Legal Aid attorney who had represented defendant at the arraignment and preliminary hearing on the pending kidnapping case, asked for counsel to be appointed pursuant to County Law article 18-B because of a conflict of interest between defendant Rosa and a codefendant. There was no evidence as to the time that the newly assigned attorney-in-fact entered the case. The Appellate Division held that, absent evidence to the contrary, representation by the Legal Aid attorney continued, insofar as he did not literally ask to be relieved. That meaning cannot be credited to what was clearly a fortuitous choice of words. Implicit in an application for assignment of another attorney because of a conflict of interest with a codefendant is a request to be relieved from representation. In no other way but by being relieved, could the attorney continue to represent the codefendant. (Code of Professional Responsibility, Canon 5 [in McKinney’s Cons Laws of NY, Book 29, Judiciary Law, appendix].)
Hence when the court granted the Legal Aid Society attorney’s motion to assign counsel, the Legal Aid attorney was relieved of his representation of defendant. There is no doubt that defendant could not be questioned as to the kidnapping, since his right to counsel had indelibly attached (People v Samuels, 49 NY2d 218). But where he was not represented by counsel on that earlier charge, he could be questioned by the police as a suspect in any other matter in the same way as any *388 first offender could be questioned (People v Kazmarick, 52 NY2d 322, 328, supra). As such, he could invoke his right to counsel or effectively waive his right to counsel. In short, sufficient protection was accorded under Miranda v Arizona (384 US 436) and its progeny (see, People v Hopkins, 58 NY2d 1079, 1082; People v Angus, 56 NY2d 549, affg 81 AD2d 971; People v Cunningham, 49 NY2d 203).
In sum, the evidence established that defendant’s Legal Aid attorney on the pending case had been relieved. Since the defendant did not show that any other attorney had entered that proceeding to represent him, he failed to meet his burden of showing that he was represented by counsel on the pending kidnapping charge. Accordingly, the interrogation was violative of none of the defendant’s constitutional rights and his statements were admissible.[3]
The majority has carefully considered the arguments urged in the dissenting opinion and rejects them. Simply put, the facts recited above hardly raise the specter of a manifest injustice. What the dissenter really urges is that Bartolomeo and Rogers should be extended, which we decline to do.
For the reasons stated, the order of the Appellate Division should be reversed and the matter remitted to that court for review of the facts.

. The People’s argument that our right to counsel decisions should be limited to prospective application is foreclosed by a consistent line of contrary holdings (People v Pepper, 53 NY2d 213,221; People v Albro, 52 NY2d 619,624; People v Bell, 50 NY2d 869, 871; People v Singer, 44 NY2d 241, 251; People v Macedonia, 42 NY2d 944).

. The burden of proof in Federal cases with respect to voluntariness is also on the People but they need prove it only by a preponderance of the evidence (Lego v Twomey, 404 US 477).

. Parenthetically, the People’s contention that the Appellate Division improperly ordered a reopened Huntley hearing since the defendant had failed to present that specific claim at the original Huntley hearing is meritless. The original record made apparent the issue which was further explored at the reopened hearing and as such, appellate review was not precluded (People v Kinchen, 60 NY2d 772; People v Charleston, 54 NY2d 622).