OPINION OF THE COURT
Dan Lamont, J.
The indictment charges defendants with the crimes of burglary in the third degree, in violation of section 140.20 of the Penal Law, criminal mischief in the third degree, in violation of section 145.05 of the Penal Law and grand larceny in the third degree, in violation of subdivision 1 of section 155.30 of the Penal Law. The allegations are that defendants, in the early morning of April 9, 1983, unlawfully entered the building of McCarthy Ford, Inc., in the Town of Cobleskill, damaged various items of property therein, and stole property consisting of cash, payroll checks and customer checks.
BURDEN OF PROOF
Defendants each move to suppress certain oral and written statements allegedly made to public servants engaged *747 in law enforcement. The suppression hearings were consolidated because the witnesses and issues presented were substantially the same for each defendant. The People bear the burden of proving, beyond a reasonable doubt, that the statements were made voluntarily within the meaning of CPL 60.45.
THE ISSUE
The primary issue presented is whether defendants — just hours after being arraigned in New Jersey upon New Jersey criminal charges — can be questioned by New York State Police on unrelated New York criminal charges without an attorney being present. For reasons which follow, this court holds that where the New York police inquire of defendants whether they have legal counsel on the New Jersey charges, and where defendants say they do not have counsel and in fact they do not have counsel on the New Jersey charges, the questioning of defendants on the unrelated New York charges is permissible and proper.
CREDIBILITY FINDINGS
A pretrial suppression hearing was conducted before me on May 4, 1984. State Police Investigators Anthony Reppenhagen and William W. Barnes testified for the People. Both investigators appeared frank and candid, and the testimony of each contained no serious contradictions or inconsistencies. Consequently, I give credence to such testimony.
Defendant Raymond J. St. Clair testified in his own behalf. He is an interested witness, with numerous prior convictions affecting credibility. His demeanor was somewhat evasive, and his testimony appeared tailored by him to raise constitutional issues and objections. I accept some portions of his testimony but reject other contradicted portions.
Defendant Timothy Mehan testified in his own behalf. He is also an interested witness, with numerous prior convictions involving acts of dishonesty. He appeared generally candid, but not entirely so. I accept some portions of his testimony, but reject other contradicted portions.
Based upon the evidence adduced at the hearing, I find the following facts beyond a reasonable doubt.
*748 FINDINGS OF FACT
In the early morning of April 28, 1983, defendants were found by police on the roof of a supermarket in Ocean County, New Jersey. From the roof defendants were attempting to enter the market. Defendants were arrested for attempted burglary and taken to the municipal police station, placed in a holding cell, and later were taken to the Ocean County Jail.
A search of Mehan’s wallet revealed a paper containing the name of his parole officer. Mehan had just recently been released on parole from State prison in New York on March 17, 1983, after having served a portion of a 21/2- to 5-year indeterminate sentence for burglary.
State Police Investigator Anthony Reppenhagen of the Fonda station and Investigator William Barnes of the Duanesburg station were contacted in reference to these defendants. Investigator Reppenhagen was particularly interested in these two defendants in connection with the burglary and larceny of a supermarket in Fulton County, New York. Investigator Barnes had been given a written statement on April 28,1983, by one Bruce Van Burén that the two defendants had committed the subject offenses in Schoharie County, New York, and that Van Burén had forged and cashed the stolen checks at the request of the defendants. Detective Dominick Macherone of the Glen-ville, New York, Police Department was also interested in the two defendants with respect to a burglary committed within his jurisdiction.
On April 29, 1983, the two investigators and Detective Macherone drove to Ocean County, New Jersey, to interview the defendants. They went first to the Sheriff’s office. They observed Mehan’s vehicle, which had been impounded. At about 1:45 p.m. they proceeded to the prosecutor’s office, near the jail, and were provided a room in the prosecutor’s office where the questioning of defendants would take place. The New York police officers did not inquire of anyone in the New Jersey prosecutor’s office as to the status of the New Jersey case.
In the early afternoon of April 29 defendants were taken to court for an arraignment in regard to the New Jersey incident. Defendants responded affirmatively when asked *749 if they desired assigned counsel. The Judge informed them that they would be contacted by someone in the Public Defender’s office, and they were returned to the county jail. No one from the Public Defender’s office in fact contacted either defendant until long after the New York officers had completed their questioning and had returned to New York.
Either during or after the questioning of defendants, Investigators Reppenhagen and Barnes and Detective Máchenme were informed by an investigator in the prosecutor’s office — who was not present at the arraignment — that defendants had been arraigned for the New Jersey incident. No one informed the New York officers that assigned counsel had been requested by defendants, and to their knowledge the New York officers did not believe that counsel had been assigned to defendants or that defendants had requested counsel.
At about 2:00 p.m., or shortly thereafter, St. Clair was brought into the room in the prosecutor’s office. Present were the defendant, Investigators Reppenhagen and Barnes and possibly Detective Macherone. Investigator Barnes fully advised defendant of his Miranda rights. When asked, defendant said he understood his rights and in fact then recited his Miranda rights to Investigator Barnes. The investigator then asked defendant if he had an attorney. Defendant responded that “I don’t have one.” Investigator Barnes asked defendant if he wanted an attorney. Defendant responded that he did not. Asked if he wished to respond to questions concerning certain incidents in New York State, defendant said that before deciding whether to answer questions he wanted first to speak with Mehan, that they, in words or substance, “did the crime together, and want to do the time together.”
St. Clair was permitted to return to the jail and speak to Mehan. Both defendants returned together, St. Clair giving the “thumbs-up” sign as he entered the room. Investigator Barnes fully repeated the Miranda rights to Mehan, in the presence of St. Clair. Mehan said he understood his rights. Investigator Barnes asked Mehan if he wanted an attorney, to which Mehan responded that he did not want an attorney. Investigator Barnes asked Mehan if he had an *750 attorney, to which Mehan responded that he did not have an attorney and that one had not been assigned. Neither defendant told the officers that he had requested assigned counsel.
Defendants proceeded to tell the officers about their actions in New Jersey leading to their arrests. They said that they did not like the Ocean County Jail, that there were “crazy people” there, and told the officers about inmates “picking on” Mehan and how St. Clair “stood guard” while Mehan slept. They wanted to know whether they could get out of the Ocean County Jail and return to New York. They asked a number of questions about waiving extradition, returning to New York and dropping the charges in New Jersey.
Investigator Barnes explained that defendants might stay in New Jersey and serve time for the New Jersey crimes, and then be returned to New York. The investigator also said it was possible that New Jersey would permit defendants to return to New York sooner to face the New York charges. The investigator said he had no control over these decisions. Investigator Reppenhagen also said it was possible that New Jersey might “defer prosecution” in view of the New York charges, but that he understood that the New Jersey authorities intended to prosecute the New Jersey case. Both investigators said that they did not know what the New Jersey authorities were going to do. They said that if defendants told them the truth, they would advise the District Attorneys in New York that defendants had been completely cooperative and had told the truth. They also said that they could not make any promises with respect to the New Jersey charges or the New York charges.
Defendants then related a number of criminal actions in New York State. During this lengthy conversation Investigator Barnes, who had met Mehan when the defendant was eight years old, spoke separately with him. Mehan talked about his life and criminal history. He cried and was consoled by the investigator. The investigator told defendant that he wanted defendant to “make a clean break,” and encouraged him to tell the truth.
*751 The conversation among the investigators and both defendants then resumed, and Investigator Reppenhagen then typed both written statements. During the questioning, defendants were offered donuts, soda and coffee. After the statements were both typed, each defendant read the first sentence of his statement out loud, and Investigator Reppenhagen explained that the first sentence was like a witness taking an oath in court. Investigator Reppenhagen told defendants to advise him of any corrections needed in the statements. Defendants then read their respective statements and signed them in the presence of Investigators Reppenhagen and Barnes and Detective Macherone. Defendants were then returned to the county jail at approximately 8:00 p.m.
During the questioning a number of people, engaged in other business, entered and left the room, which appeared to be a secretary’s office or conference room. No New Jersey police officer or representative from the New Jersey prosecutor’s office participated in the questioning of defendants.
CONCLUSIONS OF LAW
On April 29,1983 defendants were in the lawful custody of the New Jersey authorities, having been arrested the previous day. The New York officers were required to give defendants their Miranda rights in such an inherently custodial setting. (People v Yukl, 25 NY2d 585.)
The New York officers fully advised defendants of their Miranda rights which they understood and waived. Defendants did not request counsel or assert their rights to remain silent. (CPL 60.45, subd 2, par [b], cl [ii].)
The question remains, however, as to whether the New York officers may question defendants, given the existence of the New Jersey criminal proceedings. The Court of Appeals has discussed in recent cases two distinct, but parallel, lines of cases involving the right to assistance of counsel. (See People v Kazmarick, 52 NY2d 322; People v Cunningham, 49 NY2d 203.)
In the first line of cases, the right to counsel is deemed to “indelibly attach” upon the commencement of formal adversary proceedings, and a defendant cannot at that point waive his right against self incrimination in the absence of *752 counsel. (People v Samuels, 49 NY2d 218; People v Settles, 46 NY2d 154; People v Meyer, 11 NY2d 162.)
In the second line of cases, the Court of Appeals has ruled that a suspect in custody who has counsel cannot, in the absence of counsel, waive his right against self incrimination and be questioned about the specific charge for which he is being held. (People v Hobson, 39 NY2d 479; People v Arthur, 22 NY2d 325; People v Donovan, 13 NY2d 148.)
The Donovan-Arthur-Hobson rule was extended in People v Rogers (48 NY2d 167) to bar questioning of a suspect who is in custody and represented by an attorney about crimes unrelated to those for which he is being held, in People v Cunningham (49 NY2d 203, supra) to bar questioning of a suspect in custody who has requested counsel, and in People v Skinner (52 NY2d 24) to bar questioning of a suspect not in custody about a crime when the police know the suspect has obtained counsel. Such suspects may not waive their rights against self incrimination in the absence of counsel.
Defendants seek to connect both lines of cases by arguing that arraignment upon the New Jersey charges created a nonwaivable right to counsel, and therefore the police should not be able to question defendants with respect to the separate New York charges. However, the Court of Appeals has declined several opportunities to articulate such a rule.
In People v Kazmarick (52 NY2d 322, 324, supra), the police were permitted to question a suspect, against whom an unrelated charge was pending, even though the suspect’s right to counsel on the unrelated charge had “indelibly attached.” The significant fact was that the suspect was not in fact represented by counsel on the unrelated charge. In People v Bartolomeo (53 NY2d 225), the Court of Appeals held that if the police know a suspect has an unrelated charge pending against him, they have an obligation to inquire whether the suspect has an attorney representing him on the unrelated charge. In People v Lucarano (61 NY2d 138), the Court of Appeals apparently added to the Bartolomeo rule an additional requirement that when a suspect states he is not represented by counsel *753 on the unrelated charge, the police need not make further inquiry if the circumstances indicate that it is not unreasonable for the police to believe the suspect’s statement.
The fact that, in the instant case, two separate police agencies in two separate States were involved does not affect the ruling of this court. The New York officers were obviously aware that defendants had charges pending against them in New Jersey. (Cf. People v Fuschino, 59 NY2d 91.)
Applying the New York right to counsel rules to the unrelated New Jersey charges, the right to counsel on the New Jersey charges had clearly attached upon the New Jersey arraignment of the defendants. Such attachment, however, did not extend to the New York charges, and would not have extended to those charges even if the New York police had been aware of the attachment. The ruling in Kazmarick (supra) — that the Rogers (supra) rule applies when the police have actual knowledge that the suspect is in fact represented by counsel in the pending unrelated matter — does not support the position of defendants St. Clair and Mehan because the defendants were not in fact represented by counsel on the New Jersey charges.
The Bartolomeo (supra) “duty to inquire” rule was satisfied in the instant case because the New York officers, having been aware of the New Jersey charges, did ask both defendants whether they were represented by counsel on the New Jersey charges. Both defendants said that they were not represented by counsel.
Once the defendants denied that they were represented by counsel on the New Jersey charges, the officers were under no duty to make further inquiry, so long as it was reasonable to believe the defendants’ disclaimer of representation. (People v Lucarano, 61 NY2d 138, supra.) The officers did not know defendants had indicated at the New Jersey arraignment that they wanted the assistance of counsel on the New Jersey charges. Considering that the New Jersey arrests had just been made, the officers’ belief that defendants — in accordance with their own statements — had not yet obtained counsel was entirely reasonable.
*754 Accordingly, this court holds that the questioning of defendants with respect to the unrelated New York charges did not violate the defendants’ right to counsel.
In his dissenting opinion in People v Kazmarick (52 NY2d 322, 331, supra), Chief Judge Cooke stated that the difference between an “indelible” right to counsel and actual representation by counsel is at best a “superficial distinction”. Nevertheless, the Court of Appeals has maintained the distinction. (See People v Lucarano, 61 NY2d 138, supra; People v Fuschino, 59 NY2d 91, supra; People v Smith, 54 NY2d 954; People v Servidio, 54 NY2d 951; People v Miller, 54 NY2d 616, affg on other grounds 76 AD2d 576; People v Bartolomeo, 53 NY2d 225, supra.)
A rule that without counsel a suspect cannot at a given point waive his right against self incrimination is paradoxical by its terms, and in its practical effect, because in virtually all situations an attorney will advise the suspect to say nothing. Thus, the courts in these cases are determining, essentially, the point at which the police may no longer continue their investigation by questioning the suspect.
When the police know that a suspect is actually being represented by an attorney on unrelated charges, the line of demarcation is reached; the police should expect to communicate with the attorney. The attorney should not have to learn, after the fact, that in his absence a client has been subjected to interrogation upon or has confessed to related or unrelated criminal charges. Such a rule accords the actual representation by counsel an inviolate, extra measure of protection to which an actual attorney-client relationship is constitutionally entitled.
Before a suspect actually has an attorney on unrelated charges, the police may continue their investigation within the strictures of the Miranda rule, for at that point the balance is struck in favor of the State interest in pursuing a lawful criminal investigation.
Implicit in these cases, and in the Miranda rule, is a recognition that a suspect, during an investigation and prior to the “critical accusatory” stage, is capable of determining whether he will answer questions in the absence of *755 counsel. Without a recognition of that capacity, the questions posed in these cases would not arise, because only with an otherwise voluntary statement is the issue squarely confronted. (See People v Bartolomeo, 53 NY2d 225, 238, supra [Wachtler, J., dissenting].)
Defendants also argue that the police improperly induced the inculpatory statements by holding out the prospect that the New Jersey charges would be dropped, that defendants would be returned to New York State and that the New York charges would be consolidated. Clearly defendants were anxious to get out of the Ocean County Jail and to serve in New York State whatever sentence or sentences might await them. The statements made by the New York officers, in regard to the various possibilities, were responsive to defendants’ questions and accurate. No direct or implied promises were made. The New York officers, by explaining that defendants’ cooperation would be related to the District Attorneys in New York State, did hold out the possibility that defendants would benefit by such cooperation. Such statements by police are not impermissible. (People v Perry, 77 AD2d 269.)
During cross-examination each defendant admitted to an extensive criminal record. The record amply supports the conclusion that defendants were familiar with the plea bargaining process and were aware of the power of District Attorneys to “consolidate” separate pending criminal proceedings. The defendants themselves, not the police officers, initiated the “negotiations” during which they agreed to make statements in exchange for consideration by the New York authorities and in the hope of getting out of the Ocean County Jail more quickly. The police officers made no promises or statements to defendants which created any risk that defendants might falsely incriminate themselves. (CPL 60.45, subd 2, par [b], cl [i].)
Defendants were “familiar with police procedure * * * fully capable of appreciating the consequences of confessing” and knowingly and intelligently waived their rights to counsel and their privileges against self incrimination. (See People v Perry, supra, p 272.)
*756 CONCLUSION
Defendant St. Clair’s motion to suppress his oral and written statements is denied.
Defendant Mehan’s motion to suppress his oral and written statements is denied.