OPINION OF THE COURT
Frederic S. Berman, J.
Can the police continue to interrogate a suspect about a series of crimes in New York where they have learned of a pending case against him in New Jersey, a State which does not apply the Sixth Amendment protection of right of counsel adopted in New York in the Rogers-Bartolomeo line of cases?
This novel question — for which there is no apparent case law in this State — arose during the course of a lengthy pretrial hearing at which the defendant sought to suppress certain property seized and statements made in connection with his arrest for robbery, first degree and second degree, burglary, first degree, conspiracy, fourth degree, criminal impersonation, first degree, and criminal possession of a weapon in the second and third degrees, and, by separate indictment, for murder, second degree.
FACTS
On September 5, 1986, at approximately 11:00 p.m., Detectives John Elio, Luis Bauza, Joseph Rivera and Robert Small, all in plain clothes, were sitting in an unmarked police car when they received a radio run "robbery in progress” at 710 West 175th Street in Manhattan. They immediately proceeded to that location, and upon their arrival, observed people in the lobby pointing to the upper floors. Several people indicated that there was noise and screaming from upstairs. They were directed to the fifth floor of the building where they saw an elderly woman pointing to apartment 5L, saying something in *31 Spanish. Detective Bauza, who is fluent in Spanish, testified that the woman said "in there, in there, a man was screaming in that apartment.”
Elio and Smalls knocked loudly and repeatedly on the door of the apartment. Rivera testified that he heard someone running. He proceeded to the roof where he saw a person stick his head out of the window of the apartment. Within 2 to 3 minutes after the officers began knocking, an alarm from inside the apartment started ringing. At this point the officers had their guns drawn. The door opened and an individual, Luis Delorbe (who has since pleaded guilty), exited quickly, followed immediately by the defendant, Hector Torres. Elio saw a gold shield on a leather strap around Delorbe’s neck which he believed to say "Special Patrol” and which he concluded to be fake. At this point Elio asked, "What’s going on here?” Whereupon Delorbe responded "We’re bounty hunters, we’re cops.”
Detectives Elio and Rivera grabbed Delorbe and placed him against the wall. He was handcuffed and frisked. Detective Smalls grabbed Torres and put him against the wall where he too was frisked and handcuffed. Almost immediately another man, the complainant Luis Lescano, exited the apartment in handcuffs. In Spanish, he told Bauza and Rivera that the defendant and Delorbe grabbed him in the hallway, identified themselves as police officers, pointed guns at him, handcuffed him in his apartment and started to rob him of jewelry. The shield was recovered from Delorbe. Three guns and another shield were recovered from inside the apartment.
The two suspects were transported back to the 34th Precinct about 11:40 p.m., where they were placed in separate interrogation rooms.
Elio and Bauza went to speak to the defendant. Bauza read him his Miranda rights which the defendant stated that he understood prior to signing the rights sheets. The defendant, who was not handcuffed, did not request a lawyer, nor did he mention a pending case in New Jersey. The officers testified that they did not ask the defendant about any criminal history. Torres stated that he was working for Delorbe and that they were collecting money.
After the initial interview, Rivera conducted a more thorough interview of the defendant. He told Torres that he could help himself by cooperating. At several points, defendant asked both Elio and Rivera (and Sergeant Eugene Sullivan in *32 a separate interview) if he could be deported to his native country, the Dominican Republic. The officers indicated that they couldn’t promise anything definite, but did say if he cooperated, his desire for deportation would be brought to the attention of the District Attorney’s office; they added, however, that the defendant would have to serve some time before any consideration of deportation. Elio and Rivera testified that although they may have told Torres once or twice that he was being implicated by Delorbe, no particular interrogation technique was used. Torres spoke freely and openly and began implicating himself and Delorbe in several separate robberies and in some homicides.
Meanwhile, Detective Ronnie Hicks from the Robbery Squad, who had been brought in because he had been investigating a series of other robberies where police impersonators were involved, took a written statement from Torres regarding the robbery at 701 West 175th Street where he had been arrested.
At approximately 3:00 a.m. on September 6th, Torres volunteered to go with Officer Rivera and Sergeant Sullivan for a drive around the precinct and point out to the officers various locations of the homicides and robberies he knew about.
Upon his return to the precinct, he continued to give information. At approximately 7:00 to 8:00 a.m., Torres went with the officers to The Bronx to try to locate an accomplice named "Tobacco”. They pursued "Tobacco” in their car to New Jersey where they lost sight of him. They then returned to the precinct at about 9:30 a.m.
Throughout the interrogations of the defendant, the officers testified that, on frequent occasions, he was offered food and drink which he consistently refused. Nor did the defendant ever ask for the questioning to cease so that he could get some sleep.
Delorbe had mentioned that he had been previously arrested in New Jersey for kidnapping but that the case had been dismissed. At about 9:00 a.m. on September 6th, Police Officer Elio called a Detective Heiser in New Jersey. It was arranged that Detective Montouri would pick up information from Passaic County regarding the defendant, Delorbe, and their accomplices, who were known to the New Jersey authorities. The detective went to New Jersey at 2:30 p.m., and picked up a package of documents which included, among others, an arrest report, a mug shot and a fingerprint card for *33 defendant Torres indicating a June 19, 1986 New Jersey arrest for weapons possession and narcotics. An arrest report for Delorbe indicating an August 1986 New Jersey arrest for tampering with a witness and a mug shot showing a June 1986 arrest date were also included in this package. Montouri testified that he merely glanced at this information and that, upon his return to the precinct, neither he nor any other officer questioned either the defendant or Delorbe regarding any information about any prior arrests contained in that packet.
Upon Montouri’s return, he reread defendant Torres his Miranda warnings and took a written statement regarding the homicides. Montouri thereupon called an Assistant District Attorney at about 5:00 p.m.
The Assistant District Attorney took a videotaped statement from defendant Torres at about 10:00 p.m., and a videotaped statement from Delorbe at about 3:00 a.m. on September 7th.
The defendant and Delorbe were then brought down to central booking and the Assistant District Attorney made efforts to expedite their arraignments.
Throughout the entire day of September 6, 1986 the officers in the 34th Precinct Detective Unit conducted an ongoing investigation into the various crimes to which the defendant and Delorbe had confessed. Photo arrays were gathered, ballistics tests were ordered, fingerprints were checked and complaint reports of other crimes were checked. At the conclusion of the hearing, it was stipulated by the People and the defense that the defendant had a pending criminal case in New Jersey and that he was represented by counsel in that case.
A. Right to Counsel
The defendant argues that all of his statements, including oral, written and videotaped confessions, should be suppressed since he was actually represented by counsel in an unrelated pending criminal case in New Jersey at the time of this arrest and subsequent interrogation. He argues that the police either knew this fact from the outset, or should have known.
In reviewing the credible evidence in this case, I find that until Detective Montouri received the New Jersey packet of documents on September 6th in the afternoon, the New York police did not have actual or imputed knowledge of the defendant’s pending case. Although the officers testified otherwise, the People concede that the police were, in fact, put on *34 notice of the defendant’s open New Jersey case from the moment Montouri received the packet of documents from the Passaic, New Jersey, authorities.
It is well settled that where the police have actual knowledge that a defendant is represented by counsel on a pending unrelated charge, they may not question him without his attorney being present (People v Rogers, 48 NY2d 167). Furthermore, where the police have actual knowledge that a defendant has a prior unrelated charge pending against him, they are obligated to inquire whether the defendant has counsel in that case, and a failure to conduct such an inquiry would render them chargeable with whatever information it would have disclosed (People v Bartolomeo, 53 NY2d 225). No such proper inquiry was conducted in the instant matter.
If, in fact, the officers did not look at the information contained in the New Jersey papers, as they testified, then they overlooked the obvious, and insulated themselves from actual knowledge of the pending unrelated charges (People v Servidlo, 54 NY2d 951). The police had either actual or constructive knowledge of these cases and they had a duty to inquire about them. They are therefore imputed with the knowledge that would have been disclosed, i.e., that the defendant had an open case and was actually represented by counsel. All interrogation should have ceased and, since it did not, any subsequent written or videotaped statements made by the defendant after Montouri’s return from New Jersey would have been impermissibly obtained.
The People argue that since New Jersey has not adopted the New York "right of counsel” rule set forth in the RogersBartolomeo line of cases, New York need not extend its "right of counsel” laws to a pending New Jersey case.[1]
There appears to be no New York case that addresses this precise issue. However, a Third Department decision, People v Mehan (112 AD2d 482 [1985], Iv denied 66 NY2d 1041), is worthy of mention.
In Mehan (supra) the defendant was arrested in New Jersey for attempted burglary of a grocery store. The police found New York parole documents among defendant’s possessions *35 and New York officials were contacted. The defendant was arraigned in New Jersey the next day and requested that an attorney be appointed. Following his arraignment in New Jersey, the defendant was questioned in the local New Jersey jail by New York police officials who came there to interrogate the defendant about his alleged participation in criminal activity in New York. After being administered his Miranda rights, the defendant replied in the negative when asked if he was represented by or had requested an attorney in the New Jersey case. Thereupon the defendant proceeded to make incriminating oral and written statements concerning various criminal activities in New York. Defendant’s motion to suppress those statements was denied.
The Third Department affirmed the denial of the motion to suppress, pointing out that "the police clearly were aware of the unrelated New Jersey charges pending against defendant and thus, were obligated to ask defendant whether he was represented by counsel. Upon making this inquiry, the police elicited a response which indicated that defendant was not represented and did not desire representation.” (Supra, at 484; emphasis supplied.) Therefore the police had fulfilled their obligation and were free to question the defendant. It is reasonable to assume that had the police in Mehan (supra) not made the required inquiry about defendant’s representation, the Third Department would not have affirmed the denial of the motion to suppress.
In the case at bar, the People rely on the Court of Appeals decision in People v Ridgeway (64 NY2d 952) as authority that the defendant’s right to counsel herein had not attached in New Jersey when defendant was questioned despite the fact that under New York law the right of counsel would have attached. However, a careful reading of Ridgeway reveals that the People’s reliance is misplaced.[2]
In the instant case, the defendant had an ongoing criminal prosecution with a New Jersey attorney representing him. Most importantly, the New York police had knowledge of these facts. In the face of the established line of New York cases which strictly and scrupulously guard defendant’s right *36 to counsel, it would be inappropriate to hold that, merely because his other case was in a foreign jurisdiction, the defendant should be entitled to any less protection. (See, People v Mehan, 112 AD2d 482, supra; People v St. Clair, 124 Misc 2d 746.)
Consequently, the motion to suppress the written statement and a videotape statement made by the defendant after the return of Detective Montouri from New Jersey is granted.
With respect to the written statement made by the defendant prior to Montouri’s trip to New Jersey, the credible evidence at the hearing established that Miranda rights were read to him shortly after arrival at the precinct. He understood those rights and never asked to speak with an attorney. He was not handcuffed during any interview and was continually offered, but refused, food and drink. No threats were made, and the officers testified that, although they may have told Torres that Delorbe was implicating him, no unusual interrogation techniques or ruses were utilized.
Defendant’s claim that he was promised deportation to the Dominican Republic if he cooperated and made statements is rejected as contrary to the weight of the evidence.
Similarly defendant’s contention that he was deprived of his right to be arraigned within a reasonable period of time is likewise rejected since there was an ongoing investigation of the various crimes that the defendant and Delorbe related during the course of their interrogations. (See, People v Hopkins, 58 NY2d 1079.) More serious might have been the question of whether the delay in arraignment until September 7th was so excessive as to affect the voluntariness of defendant’s statements. That point has become moot as the result of the court’s decision to suppress all statements made subsequent to Detective Montouri’s trip to New Jersey during the early afternoon of September 6th.
Accordingly, the motion to suppress the oral and written statements of the defendant prior to the New Jersey visit is denied.
B. PROBABLE CAUSE TO ARREST DEFENDANT
The final issue is whether the police had probable cause to arrest the defendant at 701 West 175th Street and to seize property. It is well settled that the predicate for police action and the level of intrusion warranted depends in each case upon the information furnished to the police combined with *37 police observations at the scene (People v Bronston, 113 AD2d 627, affd 68 NY2d 880, citing People v Stewart, 41 NY2d 65; People v Stroller, 42 NY2d 1052). "Probable cause requires, not proof beyond a reasonable doubt or evidence sufficient to warrant a conviction * * * but merely information which would lead * * * the officer to conclude, under the circumstances, that a crime is being or was committed” (People v McRay, 51 NY2d 594, 602).
Here, while it is true that only an anonymous report of robbery in progress prompted the officers to the scene, what they observed at the apartment building throughout the escalating encounter, provided probable cause to believe that criminal activity was afoot and created a proper basis to arrest the defendant and Delorbe.
Once at the building, the officers testified that several residents in the lobby indicated both in English and Spanish that there were loud noises coming from some apartment upstairs. The police were led directly to the fifth floor where a woman told the officers in Spanish that a man had been screaming in apartment 5L. Two of the officers banged on the door of the apartment, while the two others went up to the roof. After 2 or 3 minutes, the police officers heard an alarm ringing within the apartment and then, almost immediately, the door opened and Delorbe, followed by the defendant, quickly walked out of the apartment. Detective Elio testified that his gun had been drawn even prior to the door opening and that when he immediately spotted what he believed to be a fake shield around Delorbe’s neck, he asked "what’s going on here?” When Delorbe responded "We’re bounty hunters, we’re cops”, the officers placed the two against the wall, frisked and handcuffed them. The officers admitted that, at this time, both the defendant and Delorbe were not free to leave and were, in fact, under arrest.
All of these facts were sufficient to establish probable cause that both the defendant and Delorbe were engaged in criminal activity — at the very least, criminal impersonation of a police officer. Probable cause that a robbery had taken place was firmly established within moments when the officers spoke to the complainant, Luis Lescano, who, handcuffed, explained to the officers that these two men had pretended to be police, forced him into his apartment, handcuffed him, held him at gunpoint and took jewelry from him.
The actions of the police were reasonable in light of the *38 escalating situation they were faced with, and probable cause therefore existed which permitted the police to arrest the defendant and Delorbe and to seize the guns, badge and jewelry found in the apartment. The motion to suppress the guns, badge and jewelry is therefore denied.

. See State v Darby (211 NJ Super 367, 511 A2d 1222); State v Porter (210 NJ Super 383, 510 A2d 49), i.e., defendant may effectively waive counsel on a new charge even when represented by counsel in another criminal proceeding where the right to counsel on the new charge has not yet attached.

. In People v Ridgeway (64 NY2d 952), a Federal complaint and arrest warrant had been issued for the defendant for bank robbery. Under Federal law, an arrest warrant did not constitute the commencement of criminal proceedings. Therefore, the defendant’s right of counsel had not as yet attached at that stage of the proceedings. Here the defendant’s right of counsel had attached at the time of his arraignment in New Jersey.