OPINION OF THE COURT
Dominic R. Massaro, J.
Albert Dross, Sr., is charged with the crimes of sodomy in the first degree (Penal Law § 130.50 [1]), sodomy in the second degree (Penal Law § 130.45), sexual abuse in the first degree *784 (Penal Law § 130.65 [1]), endangering the welfare of a child (Penal Law § 260.10 [1]) and incest (Penal Law § 255.25). Indictment No. 3802/88 has been filed against him, accordingly.
The defendant claims to be aggrieved by an unlawful and/or improper acquisition of evidence. Reasonably expecting that such evidence may be offered against him in the pending action, Mr. Dross now moves for an order of suppression. The basis for said motion is a statement involuntarily made to a public servant engaged in law enforcement activity. The prohibition is found at CPL 60.45. Based thereon, and for the reasons hereinafter set forth, the court grants the suppression motion.
It is the People who shoulder the burden of proving voluntariness. In Lego v Twomey (404 US 477 [1972]), the United States Supreme Court approved the admissibility of a confession where voluntariness is established by a preponderance of the evidence. However rich the yield of Federal constitutional decisions on point (see, Colorado v Connelly, 479 US 157 [1986]), the landscape is incomplete without reference to State law. New York provides a ready example of a developed line of State constitutional law that imposes a higher standard than does the analogous Federal law. In New York, voluntariness must be established beyond a reasonable doubt (People v Valerius, 31 NY2d 51, 55 [1972]).
In People v Pobliner (32 NY2d 356, 368 [1973]), our Court of Appeals, after noting that Lego (supra) permits the voluntariness of a confession to be established " 'by a preponderance of the evidence’ ”, observed that this holding is "contrary to the New York rule in this particular respect.”
A pretrial suppression hearing was conducted before this court on June 19 and 20, 1989, pursuant to People v Huntley (15 NY2d 72 [1965]). One witness was called by the People, Detective Pamela Louis. Nereida Dross testified on behalf of her defendant husband. The testimony of each witness imparted the force and flavor of credibility.
FINDINGS OF FACTS
On March 13, 1988, police officers visited the defendant’s home. This in response to a complaint that Mr. Dross had sexually abused his son. At the time of the visit, he was not at home. His wife, Nereida, told the visiting officers that the *785 defendant was in Federal court, in Manhattan, attending to an unrelated weapons charge(s).
Later that day, having been assigned to investigate the allegations, Detective Louis telephoned the defendant and asked him to come to her office at the 48th Precinct. Upon his arrival, Mr. Dross, who is blind, was placed in an office with several other police officers. One of the officers, a Detective Conerly, inquired: "Where’s Charlie?,” to which Mr. Dross responded "Charlie’s with me wherever I go.” This seemingly innocuous exchange between Detective Conerly and Mr. Dross was, in fact, deeply damaging to the defendant’s position in the instant case, for at the time that Detective Conerly asked "Where’s Charlie?,” he was aware that Mr. Dross’s son had reported the defendant exclaiming "Here comes Charlie!” immediately before allegedly inserting his penis into the son’s anus. The self-incriminating statement was made prior to Mr. Dross having been advised of his constitutional right to remain silent (see, US Const 5th Amend; NY Const, art I, § 6).
The instant case presents two novel legal issues for analysis: first, whether the rule established in People v Rogers (48 NY2d 167 [1979]) and People v Bartolomeo (53 NY2d 225 [1981]) applies where the pendency of another case, of which the police are aware, is in a Federal court within the New York geographical boundary; and, secondly, whether Detective Conerly’s off-handed remark, "Where’s Charlie?” constitutes interrogation which otherwise would be barred under Rogers (supra), Bartolomeo (supra) and Miranda v Arizona (384 US 436 [1966]).
THE ROGERS-BARTOLOMEO ISSUE
Where the police are aware that a defendant has a pending criminal case upon which he is represented by counsel, no questioning is permitted. It follows even if the questioning concerns only unrelated crimes (People v Rogers, supra). Indeed, if the police know a suspect has an unrelated charge pending against him, they have an obligation to inquire whether the suspect likewise has an attorney in appearance on the unrelated charge.
Rogers (supra) and (Bartolomeo (supra) notwithstanding, there is authority for the proposition that a pending case, wherein the defendant is represented by counsel, does not bar questioning on an unrelated matter where the pending case is in another jurisdiction (People v Bing, 146 AD2d 178 [2d Dept *786 1989]). In Bing, the defendant was a suspect in a Nassau County robbery. While investigating the case, the police there learned that the defendant had an outstanding arrest warrant in the State of Ohio. The defendant was arrested in New York on the outstanding Ohio warrant, at which time he incriminated himself in the Nassau County robbery. Defendant later moved to suppress the incriminating statement, alleging that his representation by counsel in the pending Ohio matter precluded him from making an uncounseled waiver of a constitutional right. The Appellate Division, Second Department, rejected the contention, stating that “this State’s interest in protecting the defendant’s rights vis-á-vis an unrelated case in a foreign jurisdiction is minimal. This is particularly so where, as hére, it is unclear whether that other State or foreign jurisdiction has expressed any interest in so protecting the defendant. On the other hand, this State’s legitimate and important interest in law enforcement and criminal investigations conducted within its borders remains constant (see, People v Colwell, 65 NY2d 883, 885 [1985], supra; People v Lucarano, 61 NY2d 138, 148 [1984], supra). On balance, then, we conclude that any interest that this State may have in protecting a defendant’s right to counsel vis-á-vis a charge pending in a foreign jurisdiction is outweighed by its legitimate interest in the enforcement of its criminal statutes and, thus, an extension of the Rogers-Bartolomeo rule is not justified (see, People v Colwell, supra; cf., People v Rogers, 48 NY2d 176, supra)” (People v Bing, supra, at 184).
An earlier Third Department case, People v Mehan (112 AD2d 482 [1985], lv denied 66 NY2d 1041 [1985]), reached a contrary opinion. In Mehan, police officers from New York, investigating a crime that occurred here, interrogated a defendant while he was incarcerated in New Jersey on a pending unrelated charge. The court held that a pending out-of-State case could trigger the defendant’s right to counsel where the police are aware of the out-of-State case.
There does not appear to be any First Department case wherein the issue of whether pending charges in another jurisdiction triggers a defendant’s right to counsel pursuant to Rogers (supra) and Bartolomeo (supra). However, two lower court decisions have likewise produced conflicting opinions.
In People v Torres (137 Misc 2d 29 [Sup Ct, NY County 1987]), New York City detectives interrogated a suspect about a local crime; this despite the fact that the detectives knew, or should have known, of the suspect’s representation by counsel on an unrelated criminal matter pending in New Jersey. The *787 court held that "[i]n the face of the established line of New York cases which strictly and scrupulously guard defendant’s right to counsel, it would be inappropriate to hold that, merely because his other case was in a foreign jurisdiction, the defendant should be entitled to any less protection. (See, People v Mehan, 112 AD2d 482, supra; People v St. Clair, 124 Misc 2d 746.)” (People v Torres, supra, at 35-36.)
In People v Baptiste (NYLJ, June 16, 1989, at 26, col 1 [Sup Ct, NY County]), Los Angeles detectives, acting at the request of and on behalf of the New York City Police Department, interviewed a suspect who was incarcerated there. The topic of the interview was a crime that had been committed in New York. The suspect waived his right to counsel and made incriminating statements. The court held that, despite the fact that the California police were acting as agents of the New York police, defendant’s pending California case should not have the same impact on his right to counsel as would a pending New York case. The court reasoned that the primary concern of the Rogers rule was that questioning on unrelated charges might interfere with the existing attorney-client relationship, but that where the unrelated charge is for a crime committed in another State, any attorney-client relationship in that other State "would not likely be affected by an independent investigation into a homicide in New York. * * * New York’s interest in protecting defendant’s rights on the unrelated case in California were indeed minimal compared to its interest in law enforcement in New York” (supra, at 26, col 2).
While this court agrees with the reasoning set forth by the Bing and Baptiste courts, it finds the instant case distinguishable on the facts. Here, the unrelated charge(s) was pending not in another State, but in Federal court in New York, which while concededly another jurisdiction, is locus in quo. Defendant’s attorney on the unrelated case practices law in the same geographical vicinity. He presumably was reachable by telephone, and could readily have counseled the defendant with respect to the charges stated herein. Thus, it follows, denial of defendant’s right to counsel in the instant case clearly interfered with the attorney-client relationship, in derogation of the Sixth Amendment guarantee as enunciated under the Rogers-Bartolomeo rule
STATEMENTS IN CUSTODY
Even assuming, arguendo, that the rule did not preclude *788 admission, the incriminating "Charlie” statement should still find suppression as having been obtained in violation of defendant’s Miranda rights.
In order for Miranda (supra) to apply, a defendant must be both in police custody and under interrogation (see, People v Bodner, 75 AD2d 440 [4th Dept 1980]). A statement "given freely and voluntarily without any compelling influences is, of course, admissible in evidence” (Miranda v Arizona, supra, at 478). Conversely, "a statement given in reply to police questioning may be admissible if given when the suspect is not in custody (see People v Yukl, 25 NY2d 585, cert den 400 US 851; People v Rodney P. [Anonymous], 21 NY2d 1).” (People v Bodner, supra, at 445.)
When he is physically deprived of his freedom of action in any significant manner, or when he is lead to reasonably believe that his freedom of action has been significantly curtailed, a citizen is in "custody.” However, mere presence in a police station does not necessitate a finding of "custody” (see, Oregon v Mathiason, 429 US 492 [1977]).
And where a suspect voluntarily comes to a police station for questioning, the test is not whether the police intend to allow him to leave but whether a reasonable person, innocent of any crime, would have felt free to leave (People v Yukl, supra, at 598). Notwithstanding, a "request to come to the police station may easily carry an implication of obligation, and the appearance itself, unless clearly shown to be voluntary, may be an awesome experience for the ordinary citizen (Dunaway v New York, 442 US 200)” (People V Byers, 71 AD2d 77, 80 [1979]).
There is little difficulty in concluding that the defendant was in custody at the time that he was questioned and uttered the incriminating statement. A number of factors support the court’s conclusion. These include not simply the defendant’s presence at the precinct, but the fact that he, a blind man, was placed into what must be considered a highly intimidating situation when asked to remain in a room with several police officers. Also, the fact that Mr. Dross was never at any time advised that he was neither under arrest nor free to leave. Applying the test as to whether a reasonable person would have thought himself in custody under the totality of the circumstances extant, the instant case must find answer in the affirmative (see, People v Palumbo, 49 NY2d 928 [1980], revg 65 AD2d 443 [1978]; People v Balint, 92 AD2d 348 [1st Dept 1983]).
*789 The defendant was likewise subjected to "interrogation.” "[T]he term 'interrogation’ under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the Miranda safeguards were designed to vest a suspect in custody with an added measure of protection against coercive practice, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseen results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response” (Rhode Is. v Innis, 446 US 291, 301-302 [1980]; emphasis in original; see also, People v Bodner, supra, at 445-446).
The case before the court is highly suggestive of the fact that Detective Conerly should have known that this interrogatory to the defendant, "Where’s Charlie?” was reasonably likely to produce an incriminating response. Indeed, the court finds that the officer deliberately and designedly set out to elicit the defendant’s self-incriminating statement. His question, therefore, was "interrogation”; it is subject to the restraints set forth by the Miranda court. Since Mr. Dross had not been properly advised of his rights thereunder, the statement must be suppressed.
CONCLUSION
Based upon the foregoing, the motion to suppress is, in all respects, granted.